**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CRYSTAL A. deGREGORY,**

**Plaintiff,**

**v.** **Case No. 6:26-cv-2272**

**BETHUNE-COOKMAN UNIVERSITY, INC.,**

**Defendant.**
______________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Crystal A. deGregory, by and through undersigned counsel, sues Defendant, Bethune-Cookman University, Inc., and alleges as follows:

## I. NATURE OF THE ACTION

1. This is an action for national-origin discrimination, disability discrimination, retaliation, interference with medical-leave rights, and related relief arising out of Defendant's discriminatory and retaliatory treatment and termination of Plaintiff. Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq.; the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.; and the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq.

## II. JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4), because those claims arise under the laws of the United States, including Title VII, the Americans with Disabilities Act, and the Family and Medical Leave Act.

3. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's claim under the Florida Civil Rights Act, because that claim is so related to the federal claims that it forms part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, in Daytona Beach, Volusia County, Florida.

5. Assignment to the Orlando Division is proper under Local Rule 1.04, Middle District of Florida, because Volusia County lies within the Orlando Division and the events giving rise to this action occurred in Volusia County.

## III. THE PARTIES

6. Plaintiff Crystal A. deGregory is a natural person who resides in Nashville, Tennessee, and is sui juris. At all times relevant, Plaintiff was an "employee," and an "eligible employee," within the meaning of the statutes invoked in this Complaint.

7. Defendant Bethune-Cookman University, Inc. is a Florida corporation with its principal place of business in Daytona Beach, Volusia County, Florida, where it operates a private university. At all times relevant, Defendant employed more than 500 employees and was an "employer," and a "covered employer," within the meaning of the statutes invoked in this Complaint, including for purposes of the coverage and numerosity requirements of Title VII, the Americans with Disabilities Act, the Family and Medical Leave Act, and the Florida Civil Rights Act.

## IV. ADMINISTRATIVE EXHAUSTION

8. Plaintiff has satisfied all conditions precedent to the institution of this action, or such conditions have been waived, excused, or otherwise fulfilled.

9. On or about December 10, 2025, Plaintiff timely filed a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission, which assigned it Charge No. 510-2026-02118, alleging discrimination based on national origin and disability and retaliation. Pursuant to the work-sharing agreement between the Equal Employment Opportunity Commission

and the Florida Commission on Human Relations, the Charge was dual-filed with the Florida Commission on Human Relations.

10. On or about July 1, 2026, the Equal Employment Opportunity Commission issued Plaintiff a Notice of Right to Sue with respect to the Charge.

11. Plaintiff has filed this action within ninety (90) days of her receipt of the Notice of Right to Sue.

12. More than 180 days have elapsed since Plaintiff filed her Charge, and the Florida Commission on Human Relations did not conciliate or resolve the Charge within that period. Plaintiff has therefore exhausted her administrative remedies under the Florida Civil Rights Act, Fla. Stat. § 760.11.

13. No exhaustion of administrative remedies is required as a precondition to Plaintiff’s claim under the Family and Medical Leave Act.

## V. STATEMENT OF FACTS

### A. Dr. deGregory’s Employment and Role

14. Dr. deGregory is of Bahamian national origin.

15. At all times relevant, Dr. deGregory was employed by Defendant as a Tenured Associate Professor of History and as Director of the Mary McLeod Bethune Institute for the Study of Women and Girls.

16. Dr. deGregory began her employment with Defendant on or about August 14, 2022. Her annual salary was $125,000, and her compensation included University-provided housing and employee benefits.

17. Throughout her employment, Dr. deGregory reported to Dr. Karen W. Bearden, Defendant's Executive Vice President and Chief Innovation Officer.

**B. Dr. deGregory's Disability, Defendant's Knowledge of It, and the Failure to Accommodate**

18. Dr. deGregory has a disability within the meaning of applicable law, namely major depressive disorder (recurrent, moderate) and generalized anxiety disorder, which substantially limit major life activities including working, concentrating, sleeping, and eating.

19. Dr. deGregory's conditions were longstanding and pre-existed the events giving rise to this action. Her treating providers had cared for her mental health since at least 2021.

20. In or about August 2024, Dr. deGregory's treating licensed clinical social worker prepared a letter recommending that Dr. deGregory be permitted to work remotely to support her mental health.

21. On or about September 11, 2024, Dr. deGregory transmitted that letter to her supervisor, Dr. Bearden. Defendant thereby received notice, no later than

September 2024, that Dr. deGregory had a mental-health condition for which she sought a workplace accommodation.

22. In or about April 2025, Dr. deGregory requested, and Defendant granted, a medical leave of absence. Before submitting her written request, Dr. deGregory had informed Acting President and Provost Berry, by telephone, of the medical need for that leave. In granting the leave, Dr. Bearden expressly acknowledged concern for Dr. deGregory's well-being, and Acting President and Provost Berry urged Dr. deGregory to care for her health. On more than one occasion during this period, Dr. deGregory advised Defendant's senior leadership that the conditions of her work environment were harming her health.

23. On or about April 22, 2025, Dr. deGregory's treating psychiatric provider documented that Dr. deGregory's mental health had significantly declined in close association with occupational stressors within her work environment, identified diagnoses including major depressive disorder and generalized anxiety disorder, and recommended immediate medical leave to prevent further harm.

24. In June 2025, Dr. deGregory again notified Defendant of her disability and submitted a written request for reasonable accommodation and medical leave.

25. Defendant did not engage in any good-faith interactive process regarding Dr. deGregory's disability and did not provide a reasonable accommodation in

response to her requests; instead, Defendant subjected her to the adverse actions described in this Complaint.

26. Notwithstanding the notice described above, Defendant later represented, in a position statement submitted to the United States Equal Employment Opportunity Commission, that it was "unaware that Dr. deGregory has a disability or made a request for a disability accommodation."

**C. Pre-Complaint Mistreatment and Dr. deGregory's Early Reports**

27. Before June 2025, Defendant repeatedly undermined Dr. deGregory's authority as Director of the Mary McLeod Bethune Institute for the Study of Women and Girls, excluded her from decisions within her areas of responsibility, obstructed her work, and required her to absorb duties previously performed by higher-paid senior employees.

28. Dr. deGregory performed competently in her roles, including in her work on University communications in 2024; even so, Defendant progressively removed her responsibilities and authority.

29. Beginning on or about April 10, 2025, Dr. deGregory reported to senior University leadership—including Dr. Bearden and then-Acting President and Provost Dr. William Berry—that she was being subjected to a hostile work environment, disparate treatment, and administrative obstruction, and that these conditions were harming her health.

30. On or about April 22, 2025, Dr. deGregory's treating psychiatric provider documented that occupational stress within her work environment had caused a significant deterioration in her mental health and recommended immediate medical leave.

31. On or about April 29, 2025, Dr. deGregory again spoke with Dr. Berry regarding the emotional and medical impact of her working conditions.

**D. The June 18, 2025 Workplace-Violence Incident and Dr. deGregory's Reports**

32. Dr. deGregory served as the University's liaison and local host for the Southern Association for Women Historians' Triennial meeting, a national convening scheduled to take place in an on-campus event hall.

33. In the days before the event, Dr. deGregory found that the event hall had not been properly prepared, and she raised her concerns to Acting President and Provost Berry, who directed the planning group to return to the hall to address the deficiencies.

34. On or about June 18, 2025, during that walkthrough, Kathy Reeves—the University employee responsible for event setup—became agitated, repeatedly accused Dr. deGregory of lying, flailed her arms, and lunged across a table toward Dr. deGregory. Acting President Berry directed that Ms. Reeves be removed from the hall.

35. Dr. deGregory promptly reported the incident to Defendant's Human Resources department, Campus Safety, the Office of the President, and the Office of General Counsel, and she requested protection, preservation of evidence (including surveillance footage), and a proper investigation.

36. On or about June 21, 2025, Dr. deGregory submitted a formal written grievance concerning the hostile work environment, disparate treatment, and discrimination she had experienced. On or about June 22, 2025, Dr. deGregory separately submitted a written complaint and request for reasonable accommodation under the Americans with Disabilities Act, and she provided further materials on or about June 23, 2025.

**E. Defendant's Retaliatory Response**

37. Rather than protect Dr. deGregory or transparently investigate her complaints, Defendant took a series of adverse actions against her in close succession to her protected complaints.

38. On or about June 26, 2025—eight days after she reported the workplace-violence incident—Defendant placed Dr. deGregory on involuntary administrative leave. The same notice included an unsolicited proposal that she resign in exchange for a severance package.

39. On or about June 27, 2025, Defendant barred Dr. deGregory from interacting with University employees and thereafter limited or terminated her

access to her University email, systems, records, and other resources necessary to perform her duties and protect her rights.

## **F. The Housing Retaliation**

40. Beginning on or about June 30, 2025, while Dr. deGregory's complaints and internal proceedings remained unresolved, Defendant initiated efforts to remove her from her University-provided housing.

41. Defendant repeatedly dispatched Campus Safety personnel to visit or post notices at Dr. deGregory's residence and pressed her to vacate the premises.

## **G. Conversion to Unpaid Status and Loss of Pay and Benefits**

42. On or about September 1, 2025, Defendant converted Dr. deGregory's administrative leave from paid to unpaid, stopped her salary, and disrupted or terminated her employee benefits.

## **H. The Investigation**

43. Defendant retained an outside investigator to investigate matters concerning Dr. deGregory.

44. Defendant also designated or permitted Braidon Campbell, whom Defendant classified as a "Work Aid," to serve as an investigator in connection with the workplace-violence incident Dr. deGregory had reported.

45. On or about September 18, 2025, the outside investigator conducted an investigative interview of Dr. deGregory, at which her then-counsel was present.

46. Dr. deGregory cooperated with the University's investigation through counsel; any delay in scheduling her participation resulted from conflicts between her counsel's availability and the investigator's, not from any refusal by Dr. deGregory to cooperate.

47. Despite Dr. deGregory's repeated requests, Defendant did not provide her with the complete surveillance footage, witness materials, or investigative findings she had sought.

## I. The Termination

48. On or about December 1, 2025, University President Albert Mosley issued a decision terminating Dr. deGregory's employment for alleged cause.

49. Defendant's stated grounds for the termination, which Dr. deGregory disputes, were "insubordination and conduct in violation of commonly accepted standards of morality" under Defendant's Faculty Handbook, itemized by Defendant as: insubordination toward the President; "aggressive and rude behavior towards another employee"; "insubordination and failure to cooperate" with respect to Defendant's investigation; and "insubordination and failure to cooperate" with respect to Defendant's requests to vacate University housing.

50. The conduct Defendant cited as "cause" arose substantially from, and after, Dr. deGregory's protected complaints and Defendant's own post-complaint conduct—including her opposition to Defendant's efforts to remove her from her housing and her participation in the investigation about which she had raised concerns.

**J. The Hearing and Affirmance**

51. Dr. deGregory disputed the termination and invoked Defendant's Faculty Administrative Hearing process.

52. On or about December 10, 2025, Dr. deGregory filed a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission, which docketed the charge as Charge No. 510-2026-02118.

53. A Faculty Administrative Hearing was held on or about February 25, 2026. Defendant did not provide Dr. deGregory any recording or transcript of the hearing, and represented that none was made.

54. Following the hearing, Defendant's hearing committee affirmed Dr. deGregory's termination. In doing so, the committee acknowledged that the independent investigation had concluded that the June 18, 2025 incident "involved a verbal confrontation and no physical contact."

55. Dr. deGregory's employment formally ended on or about March 18, 2026, and Defendant issued COBRA continuation-coverage materials after her separation.

**K. Comparators and Disparate Treatment**

56. Defendant treated more favorably other employees who had not engaged in Dr. deGregory's protected activity and who were not of her national origin.

57. Chelsea M. Washington, who—like Dr. deGregory—was a Director reporting to Dr. Bearden, was placed on paid leave for approximately one year and then restored to her position following allegations of theft, conduct more serious than any attributed to Dr. deGregory.

58. Kathy Reeves, the employee whose conduct Dr. deGregory reported, was not disciplined. Instead, within days of the incident, Defendant promoted Ms. Reeves to Executive Administrative Assistant to the President.

59. Ashley L. Thomas was re-hired by Defendant after having been terminated for conduct Defendant had characterized as immoral.

60. Other employees who engaged in verbal altercations in the workplace were not terminated.

**L. The University's Departure from Its Contractual Tenure Procedures**

61. Dr. deGregory held tenure. The University's Board of Trustees approved her tenure as a negotiated condition of her hire, and she was hired as a tenured

Associate Professor. Although Defendant, through its General Counsel, initially asserted that Dr. deGregory was untenured, Defendant corrected that position after Dr. deGregory presented evidence of her tenure.

62. As a tenured faculty member, Dr. deGregory's employment was governed by the University's Faculty Handbook, which limited the termination of a tenured faculty member to enumerated grounds constituting cause and prescribed the procedures for the suspension and termination of tenured faculty.

63. The Faculty Handbook vested in the University President—not Human Resources—the authority to suspend a faculty member pending investigation, hearing, and determination of charges, and limited any such suspension to six months or a final decision by the University's Administrative Board, whichever occurs sooner.

64. The Faculty Handbook further recognized a tenured faculty member's right to due process in matters of dismissal and incorporated the rights prescribed by the American Association of University Professors.

65. Defendant did not follow these procedures. Dr. deGregory was placed on administrative leave by Human Resources rather than suspended by the President; she was removed without a contemporaneous statement of formal charges; her leave was converted to unpaid status; and she remained removed from her position for approximately nine months, from June 26, 2025 through her separation on March 18,

2026, without a final decision by the Administrative Board within the Handbook's six-month limit.

66. The process also lacked the safeguards the Faculty Handbook and its incorporated standards promised: the University provided no recording or transcript of the February 25, 2026 hearing; a student was used as an investigator of the incident Dr. deGregory had reported; and the President who issued the termination decision also selected a majority of the hearing committee and its chairperson and rendered the final, unreviewable decision on Dr. deGregory's challenge to that termination.

## M. Causation and Damages

67. At the time Defendant subjected Dr. deGregory to the adverse actions described in this Complaint, Defendant knew that Dr. deGregory suffered from a mental-health condition, knew that Dr. deGregory attributed the deterioration of her health to her work environment, and knew or should have known that its escalating adverse treatment of her would foreseeably aggravate her condition.

68. Defendant's conduct directly and proximately caused a severe exacerbation of Dr. deGregory's pre-existing major depressive disorder and generalized anxiety disorder and caused additional, trauma-related psychological injury. Dr. deGregory's treating psychiatric provider has opined that Defendant's

workplace conduct was the primary medical cause of Dr. deGregory's psychiatric injury.

69. As a direct and proximate result of Defendant's conduct, Dr. deGregory experienced severe anxiety, depression, panic, insomnia, hypervigilance, and related symptoms, and her treating providers have diagnosed and treated her for major depressive disorder and generalized anxiety disorder.

70. As a further result of Defendant's conduct, Dr. deGregory lost her salary, her employee benefits, and her University-provided housing, and she suffered professional and reputational harm.

71. Dr. deGregory has taken reasonable steps to mitigate her damages, including by obtaining subsequent employment.

**COUNT I — DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN IN VIOLATION OF TITLE VII**

72. Plaintiff realleges and incorporates paragraphs 6, 7, 14 through 17, 37 through 42, 48 through 50, 55, and 56 through 60 as though fully set forth herein.

73. Dr. deGregory is a member of a protected class on the basis of her national origin, which is Bahamian.

74. Dr. deGregory was qualified for her position and performed her job duties satisfactorily.

75. Defendant subjected Dr. deGregory to adverse employment actions, including involuntary administrative leave, the withdrawal of the access and resources of her position, the conversion of her compensation to unpaid status, the removal from her University-provided housing, and the termination of her employment.

76. Defendant treated employees outside Dr. deGregory's protected class, who were similarly situated to her in all material respects, more favorably than it treated her.

77. Defendant took these actions because of Dr. deGregory's national origin. Defendant's conduct was intentional and undertaken with malice or reckless indifference to Dr. deGregory's federally protected rights.

78. As a direct and proximate result of Defendant's unlawful discrimination, Dr. deGregory has suffered, and is entitled to recover, back pay, front pay, and lost employment benefits; compensatory damages for emotional distress and mental anguish; and punitive damages.

## COUNT II — RETALIATION IN VIOLATION OF TITLE VII

79. Plaintiff realleges and incorporates paragraphs 29, 35 through 42, 48 through 50, 52, and 55 as though fully set forth herein.

80. Dr. deGregory engaged in activity protected by Title VII, including her internal complaints and formal grievance opposing discrimination and a hostile work

environment, and her Charge of Discrimination filed with the United States Equal Employment Opportunity Commission.

81. Defendant subjected Dr. deGregory to materially adverse actions—actions that would dissuade a reasonable worker from making or supporting a charge of discrimination—including involuntary administrative leave, the conversion of her compensation to unpaid status, efforts to remove her from her housing, and the termination of her employment.

82. But for Dr. deGregory's protected activity, Defendant would not have taken these adverse actions. The close temporal proximity between her protected activity and the adverse actions—including the imposition of involuntary administrative leave eight days after she reported the June 18, 2025 incident—evidences the causal connection between them.

83. Defendant's conduct was intentional and undertaken with malice or reckless indifference to Dr. deGregory's federally protected rights.

84. As a direct and proximate result of Defendant's retaliation, Dr. deGregory has suffered, and is entitled to recover, back pay, front pay, and lost employment benefits; compensatory damages for emotional distress and mental anguish; and punitive damages.

**COUNT III — DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

85. Plaintiff realleges and incorporates paragraphs 6, 7, 15 through 26, 37 through 42, 48 through 50, and 55 as though fully set forth herein.

86. Dr. deGregory is an individual with a disability within the meaning of the Americans with Disabilities Act, in that she has major depressive disorder and generalized anxiety disorder, impairments that substantially limit one or more of her major life activities.

87. Dr. deGregory is a qualified individual who could perform the essential functions of her position with or without reasonable accommodation.

88. Defendant subjected Dr. deGregory to adverse employment actions, including the termination of her employment, because of her disability. Defendant's conduct was intentional and undertaken with malice or reckless indifference to Dr. deGregory's federally protected rights.

89. As a direct and proximate result of Defendant's unlawful discrimination, Dr. deGregory has suffered, and is entitled to recover, back pay, front pay, and lost employment benefits; compensatory damages for emotional distress and mental anguish; and punitive damages.

## COUNT IV — FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

90. Plaintiff realleges and incorporates paragraphs 15 through 26 as though fully set forth herein.

91. Dr. deGregory is a qualified individual with a disability who could perform the essential functions of her position with a reasonable accommodation.

92. Dr. deGregory made specific requests for reasonable accommodation, including the ability to work remotely and medical leave, and Defendant had notice of her disability and her need for accommodation.

93. Defendant failed to provide a reasonable accommodation and failed to engage in a good-faith interactive process to identify one. Defendant was responsible for the breakdown of the interactive process, and a reasonable accommodation was available that would have allowed Dr. deGregory to perform the essential functions of her position.

94. As a direct and proximate result of Defendant's failure to accommodate, Dr. deGregory has suffered, and is entitled to recover, back pay, front pay, and lost employment benefits; compensatory damages for emotional distress and mental anguish; and punitive damages.

**COUNT V — RETALIATION IN VIOLATION OF THE**

**AMERICANS WITH DISABILITIES ACT**

95. Plaintiff realleges and incorporates paragraphs 24, 29, 35 through 42, 48 through 50, and 55 as though fully set forth herein.

96. Dr. deGregory engaged in activity protected by the Americans with Disabilities Act, including requesting reasonable accommodation and opposing disability discrimination.

97. Defendant subjected Dr. deGregory to materially adverse actions, including the termination of her employment.

98. But for Dr. deGregory's protected activity, Defendant would not have taken these actions, as evidenced by the close temporal proximity between her protected activity and the adverse actions.

99. Defendant's conduct was intentional and undertaken with malice or reckless indifference to Dr. deGregory's federally protected rights.

100. As a direct and proximate result of Defendant's retaliation, Dr. deGregory has suffered, and is entitled to recover, back pay, front pay, and lost employment benefits; compensatory damages for emotional distress and mental anguish; and punitive damages.

**COUNT VI — INTERFERENCE IN VIOLATION OF THE**

**FAMILY AND MEDICAL LEAVE ACT**

101. Plaintiff realleges and incorporates paragraphs 6, 7, 16, 18 through 24, 30, 38, 42, 48, and 55 as though fully set forth herein.

102. At all times relevant, Dr. deGregory was an eligible employee, and Defendant was a covered employer, within the meaning of the Family and Medical Leave Act.

103. Dr. deGregory was entitled to leave under the Act because she had a serious health condition that rendered her unable to perform the functions of her position, and she provided Defendant with notice of her need for such leave.

104. Defendant interfered with, restrained, and denied the exercise of Dr. deGregory's rights under the Act, including by placing her on involuntary leave, converting her leave to unpaid status, failing to designate and provide job-protected leave, failing to restore her to her position, and terminating her employment. Defendant's intent is not an element of this claim.

105. As a direct and proximate result of Defendant's interference, Dr. deGregory has suffered, and is entitled to recover, her lost wages, salary, and employment benefits and other compensation, together with prejudgment interest and an additional equal amount as liquidated damages, and is entitled to equitable relief including reinstatement or front pay.

## COUNT VII — RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

106. Plaintiff realleges and incorporates paragraphs 17, 22, 24, 30, 37 through 42, 48, and 55 as though fully set forth herein.

107. Dr. deGregory engaged in conduct protected by the Family and Medical Leave Act, including requesting and taking medical leave for a serious health condition.

108. Defendant subjected Dr. deGregory to adverse employment actions, including the conversion of her leave to unpaid status and the termination of her employment.

109. The decision-makers who took these adverse actions knew of Dr. deGregory's protected conduct, and a causal connection exists between that conduct and the adverse actions, as evidenced by their close temporal proximity.

110. As a direct and proximate result of Defendant's retaliation, Dr. deGregory has suffered, and is entitled to recover, her lost wages, salary, and employment benefits and other compensation, together with prejudgment interest and an additional equal amount as liquidated damages, and is entitled to equitable relief including reinstatement or front pay.

## COUNT VIII — DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN

## IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

111. Plaintiff realleges and incorporates paragraphs 9, 12, 14 through 17, 37 through 42, 48 through 50, 55, and 56 through 60 as though fully set forth herein.

112. The Florida Civil Rights Act prohibits discrimination in employment on the basis of national origin.

113. Dr. deGregory, who is of Bahamian national origin, was qualified for and satisfactorily performed her position. Defendant subjected her to adverse employment actions, including the termination of her employment, because of her national origin, and treated employees outside her protected class who were similarly situated in all material respects more favorably than it treated her.

114. Defendant's conduct was intentional and undertaken with malice or reckless indifference to Dr. deGregory's protected rights.

115. As a direct and proximate result of Defendant's conduct, Dr. deGregory has suffered, and is entitled to recover, back pay, front pay, and lost employment benefits; compensatory damages for emotional distress and mental anguish; and punitive damages.

## COUNT IX — DISABILITY DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

116. Plaintiff realleges and incorporates paragraphs 12, 15 through 26, 37 through 42, 48 through 50, and 55 as though fully set forth herein.

117. The Florida Civil Rights Act prohibits discrimination in employment on the basis of handicap.

118. Dr. deGregory has a handicap within the meaning of the Act and was qualified to perform the essential functions of her position with or without reasonable accommodation. Defendant failed to accommodate her and terminated her employment because of her handicap.

119. Defendant's conduct was intentional and undertaken with malice or reckless indifference to Dr. deGregory's protected rights.

120. As a direct and proximate result of Defendant's conduct, Dr. deGregory has suffered, and is entitled to recover, back pay, front pay, and lost employment benefits; compensatory damages for emotional distress and mental anguish; and punitive damages.

## COUNT X — RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

121. Plaintiff realleges and incorporates paragraphs 12, 24, 29, 35 through 42, 48 through 50, and 55 as though fully set forth herein.

122. Dr. deGregory engaged in activity protected by the Florida Civil Rights Act, including opposing and complaining of discrimination and requesting reasonable accommodation.

123. Defendant subjected Dr. deGregory to materially adverse actions, including the termination of her employment. But for her protected activity, Defendant would not have taken these actions, as evidenced by the close temporal proximity between them.

124. Defendant's conduct was intentional and undertaken with malice or reckless indifference to Dr. deGregory's protected rights.

125. As a direct and proximate result of Defendant's conduct, Dr. deGregory has suffered, and is entitled to recover, back pay, front pay, and lost employment benefits; compensatory damages for emotional distress and mental anguish; and punitive damages.

## COUNT XI — BREACH OF CONTRACT

126. Plaintiff realleges and incorporates paragraphs 15, 42, 48 through 50, 53 through 55, 61 through 66, and 70 as though fully set forth herein.

127. Dr. deGregory's tenured appointment with Defendant constituted a valid and enforceable employment contract. That contract limited the termination of Dr. deGregory to cause and, through the parties' course of conduct, incorporated the suspension and termination procedures set forth in Defendant's Faculty Handbook.

128. Defendant materially breached that contract by suspending and terminating Dr. deGregory without cause and without adhering to the contractually required procedures—including by removing her from her position through Human Resources rather than by the President, without a contemporaneous statement of formal charges, for a period exceeding the six-month limit and without a final decision of the Administrative Board within that period, and without affording her the process the Faculty Handbook and its incorporated standards guaranteed.

129. As a direct and proximate result of Defendant's breach of contract, Dr. deGregory has suffered, and is entitled to recover, contract damages, including her lost salary, lost employment benefits, and other economic losses flowing from the breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Crystal A. deGregory, respectfully requests that this Court enter judgment in her favor and against Defendant, Bethune-Cookman University, Inc., and award the following relief:

a. A declaration that Defendant's conduct violated Title VII, the Americans with Disabilities Act, the Family and Medical Leave Act, and the Florida Civil Rights Act, and that Defendant breached its contract with Dr. deGregory;

b. Back pay, lost benefits, and other economic losses, together with prejudgment interest;

c. Reinstatement, or front pay and lost future benefits in lieu of reinstatement;

d. Compensatory damages, including damages for emotional distress and mental anguish, on Plaintiff's Title VII, Americans with Disabilities Act, and Florida Civil Rights Act claims, in an amount to be determined at trial;

e. Punitive damages on Plaintiff's Title VII, Americans with Disabilities Act, and Florida Civil Rights Act claims, as permitted by law;

f. Liquidated damages on Plaintiff's Family and Medical Leave Act claims;

g. Contract damages on Count XI;

h. Reasonable attorney's fees, expert fees, and costs of this action; and

i. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, Crystal A. deGregory, demands a trial by jury on all issues so triable as of right.

Dated: September 29, 2026.

Respectfully submitted,

/s/ Brandon E. Meeks
**Brandon E. Meeks, Esq.**
Florida Bar No. 1068353
THE MEEKS LAW FIRM, PLLC
1446 Marion Avenue
Tallahassee, Florida 32303
Telephone: (850) 688-8396
Email: Brandon@TheMeeksLawFirm.com
Attorney for Plaintiff